**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5237

JERRY LEE ADAMS, a/k/a Clown,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5269

JAMES EUGENE HOLMAN,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-94-248)

Argued: May 9, 1996

Decided: June 19, 1996

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen James Kott, PATTON, BOGGS, L.L.P., Greensboro, North Carolina, for Appellant Adams; John Joseph Korzen, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro, North Carolina, for Appellant Holman. Michael Francis Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** C. Allen Foster, PATTON, BOGGS, L.L.P., Greensboro, North Carolina, for Appellant Adams. Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerry Lee Adams and James Eugene Holman appeal sentences imposed by the district court following their pleas of guilty to conspiracy to possess with intent to distribute and to distribute cocaine base, arguing that the district court erred in its calculation of drug quantity. Additionally, Adams challenges the validity of his guilty plea, asserting that it was not knowing and voluntary. Finding all of these contentions to be without merit, we affirm.

I.

The conspiracy charge to which each Appellant pleaded guilty arose from a lengthy investigation of suspected drug trafficking at the Oxford Manor public housing project in Durham, North Carolina. The particular facts of the investigation are not pertinent to this appeal; it is sufficient to note that the investigation revealed that Adams supplied cocaine base and powder cocaine to a number of coconspirators, including Holman, who then sold the drugs and returned a portion of the profits to Adams.

2

Appellants and another individual subsequently were charged in a seven-count indictment. Adams was charged with one count of conspiracy to possess with intent to distribute and to distribute cocaine base, see 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981 & Supp. 1995), and with several substantive counts of distribution of cocaine base, see 21 U.S.C.A. § 841(a)(1), while Holman was charged only with conspiracy. Appellants pleaded guilty to the conspiracy counts, which alleged that they and other individuals had conspired to distribute more than fifty grams of cocaine base between March 1993 and January 1994. In each plea agreement, the Government reserved the right to litigate drug quantity at sentencing and "the right to bring to the Court's attention any facts deemed relevant for purposes of sentencing." (J.A. at 17.) Adams and Holman were sentenced to 135 months imprisonment and 87 months imprisonment, respectively.

II.

A.

We first address Appellants' claims that the district court erred in the quantities of drugs attributed to them at sentencing. Prior to sentencing, presentence reports (PSRs) were prepared for each Appellant; the portions of each PSR pertinent to this appeal are identical. Both Appellants object to drug quantities attributed to them in paragraph eight; Holman also objects to drug quantities attributed to him in paragraph six. The Government is required to prove drug quantity by a preponderance of the evidence. See United States v. Williams, 986 F.2d 86, 90 (4th Cir.), cert. denied, 509 U.S. 911 (1993). The district court's determination of drug quantity is a finding of fact subject to review only for clear error. United States v. Ricco, 52 F.3d 58, 62 (4th Cir.), cert. denied, 116 S. Ct. 254 (1995).

Paragraph eight alleged that Adams and Holman had been observed converting one ounce of powder cocaine into cocaine base at one of the apartments in the Oxford Manor project in "late July or early August 1993" (J.A. at 156), and that during the conversion process Adams had produced a handgun from his pants pocket and placed it on the kitchen table. Applying a conversion factor of .894 (to which Appellants did not object), the probation officer recommended attributing 25.34 grams of cocaine base to each Appellant.

3

Appellants challenged the information contained in paragraph eight, arguing that the information was unreliable because it was provided by an unidentified informant, the apartment in question did not contain a kitchen table, and Adams had never been inside the apartment. After considering these objections,[1] the district court found that the Government had carried its burden of proof with respect to paragraph eight.

We cannot say that this finding is clearly erroneous. At Adams's sentencing hearing, Agent William F. Marshall of the Bureau of Alcohol, Tobacco, and Firearms testified that the information in paragraph eight regarding the conversion of powder cocaine to cocaine base was provided to the Government by an unidentified informant and by another Government witness, Djuana "Skeet" Hallmon, independently of one another. Moreover, Adams and Holman acknowledged that they had converted powder cocaine to cocaine base on several occasions. Additionally, paragraph eleven of both PSRs-- to which Appellants did not object -- establishes that Holman told an under-cover agent on August 2, 1993, that he had recently "cooked up" some cocaine base. (J.A. at 157.) Accordingly, we reject Appellants' challenge to the drug quantity attributed to them in paragraph eight.

Paragraph six recounted the statements of Andre Beatty, who informed law enforcement officials that during the course of the conspiracy he spent approximately sixty dollars per week buying cocaine base, and ninety percent of his purchases were from Holman. Based on this information, the probation officer recommended attribution of 10.5 grams of cocaine base to Holman.[2] Holman contends that the district court committed clear error in adopting paragraph six because

_____

[1] Appellants contend that the district court "wrongly concluded that Adams was only objecting to the statement about the handgun [in paragraph eight] and was conceding the drug quantity." (Appellants' Br. at 14.) While the district court initially did misunderstand the nature of Adams's objection, his counsel corrected the court's misperception. Adams does not pursue on appeal the objection to the statement regarding the firearm.

[2] At sentencing, Holman argued that Beatty's account of events was factually impossible because Holman had been incarcerated for six and one-half weeks during the period of time he was allegedly selling cocaine base to Beatty. The district court agreed that Holman could not be held accountable for drugs he allegedly sold to Beatty while incarcerated, and accordingly subtracted the appropriate amount from the 10.5 grams of cocaine base listed in paragraph six. The reduction did not lower Holman's offense level, however.

4

Beatty's statement was unreliable. We disagree. Agent Marshall's testimony concerning the circumstances surrounding Beatty's cooperation in the investigation sufficiently established the reliability of the information provided by Beatty. Therefore, it was not clearly erroneous for the district court to adopt paragraph six of the PSR.

B.

Although Adams made no objection to the district court's acceptance of his guilty plea either at the plea colloquy or at sentencing, he now contends that the district court should have refused to accept his plea. According to Adams, his plea could not have been knowing and voluntary because he was never "informed, put on notice or otherwise made aware by the government in the plea agreement or by the court at the plea hearing of the specific relevant activities, conduct or instances which would be included or made a part of" the conspiracy charge. (Appellants' Br. at 8.)

Essentially, Adams asks us to establish a rule that a guilty plea is not knowing and voluntary unless the district court informs the defendant at the plea colloquy of the relevant conduct that will be considered for sentencing purposes. We decline to do so. Drug quantity is not an element of the offense of conspiracy to possess with intent to distribute narcotics. See United States v. Mills , 995 F.2d 480, 484 (4th Cir.) (noting that crime of conspiracy is based on illegal agreement, not on quantity of drugs to be distributed), cert. denied, 114 S. Ct. 283 (1993); see also United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984) (stating that the elements of conspiracy are: (1) existence of the conspiracy; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy), cert. denied, 469 U.S. 1105 (1985). The district court was not required to provide Adams with an estimate of his sentence before accepting his guilty plea, see United States v. DeFusco, 949 F.2d 114, 118 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992), and any error made by Adams's counsel in estimating his sentence does not constitute a basis for withdrawal of his guilty plea, see United States v. Lambey, 974 F.2d 1389, 1393-95 (4th Cir. 1992) (en banc), cert. denied, 115 S. Ct. 672 (1994). The district court's failure to apprise Adams of the relevant conduct pertinent to sentencing therefore does not invalidate his guilty plea.

5

III.

Having concluded that all of Appellants' assertions of error lack merit, we affirm.

<u>AFFIRMED</u>

6